JACOB SWARTWOUT *vs.* NATHAN OAKS and MARIA LOOMIS,
administratrix, &c.

Where a general guardian of infants is also appointed their special guardian
for the sale of their real estate, and having sold the same, he receives the
interest on the fund arising from the sale, he will not be adjudged to have
received the same in his capacity of general guardian, or in any other
capacity than that of special guardian; where it appears that nothing was
necessary for the support and maintenance of the infants.

Where the securities, in such a case, make the interest as well as principal
payable to the special guardian, as such, the legal presumption must be that
he received both principal and interest in the way, and in the character,
in which they were made payable, in the absence of any evidence to the
contrary.

Where an order for the sale of the real estate of infants, required the special
guardian to invest the fund arising from the sale in securities upon unin-
cumbered real estate, of double the value, payable one half to each infant
when he should arrive at the age of twenty-one, with annual interest, with-
out specifying in whose name the securities should be taken; *Held*, that it
was no violation of the order of the court, or of the duty of the special
guardian, to make the securities payable to himself as such special guar-
dian.

But that the special guardian had no authority to invest the proceeds of the
sale in bonds and mortgages payable to himself, as "guardian," in five years,
with annual interest. That he had no right to receive the principal at all,
without the order of the court, after its investment; and that he was pro-
hibited by rule of court from receiving, without the order of the court, any
more of the interest or income, than might be necessary for the support and
maintenance of the infants.

And the referee having found that the infants lived with, and were supported
by, an uncle, without charge; *Held*, that the condition on which the
guardian's right to receive the interest, or a portion thereof, without the
order of the court depended, did not exist.

And the special guardian having received and converted to his own use, the
interest as well as the principal, in clear violation of his trust, and of his obliga-
tion as special guardian; *Held*, that his sureties were liable to the infants,
for both.

A PPEAL by the defendants from a judgment entered
upon the report of a referee.

The action was brought against the defendants, the one
as a surety, and the other as the personal representative
of a deceased surety, of Isaac Shimer, in a bond given for

the faithful performance, by him, of the trust reposed in him as special guardian of the plaintiff, for the purpose of selling his real estate, to recover certain sums of money received by said Shimer, as such special guardian, and by him converted to his own use. Shimer was first appointed the *general* guardian of the plaintiff and his sister, Sarah A. Swartwout, who were minors; and he gave the usual bonds to each of said minors for the faithful performance of his duties as such general guardian; William Post and Cooper Sayre being his sureties. Shimer was afterwards duly appointed *special* guardian of said minors, for the purpose of selling certain real estate which they owned, as tenants in common. He, together with the defendant, Nathan Oaks and Anson C. Loomis, (now deceased,) as his sureties, executed to each of said minors a bond, in the penalty of $10,000, conditioned for the faithful performance of said Shimer's duties as such special guardian, in compliance with the statute and the order of the court, which bonds were duly acknowledged, approved and filed. Shimer, in pursuance of the orders of the court, sold and conveyed the real estate of said minors, received the proceeds of such sale, and was directed by the court to invest the surplus of the proceeds of such sale, after satisfying a dower interest therein, paying certain costs and expenses, and certain claims upon the property, which the court directed him to pay, "in securities upon unincumbered real estate of double the value, one half of said balance to be paid when each of the said infants shall arrive at the age of twenty-one years, with annual interest thereon." Shimer satisfied the dower interest, and paid the costs, expenses and claims which he was directed to pay, and, after making all such payments, he had in his hands, as such special guardian, on the 25th day of July, 1853, of the proceeds of such sale, $1983.47, which belonged to said minors in equal shares. Of this balance, he loaned $1300 to one Beardsley, on the 26th day of October, 1853,

upon bond and mortgage, for five years, with annual interest, upon which he received the interest, annually, for five years and upwards, when said Beardsley paid to him the whole amount due on said bond and mortgage. On the 29th day of October, 1853, Shimer, as such special guardian, loaned $500, part of such proceeds of sale, to one Boyd, and as security therefor took a bond and mortgage payable to him, as "guardian" of said minors, in five years from the date thereof, with annual interest, upon which he received the interest, annually, for seven years, and then sold and assigned said bond and mortgage to one Hurd, for which said Hurd paid him the full amount due thereon. Shimer made no other or further loans of the proceeds of such sale; but, on the contrary, converted the whole amount of such balance of $1983.47, with interest which had accrued thereon, to his own private use, became utterly insolvent, and died intestate, leaving no property of any kind, and no letters of administration have ever been granted upon his estate. Shimer made no further report to the court of his proceedings as such special guardian, after he was so directed to invest said balance, and the court made no further order in the premises, except to give the plaintiff leave to prosecute the bond given by said Shimer and his sureties to secure the due execution of his said trust. Boyd paid the interest, annually, on the mortgage assigned to Hurd, until the 29th day of October, 1866, when said Boyd paid the whole amount due thereon to said Hurd, who discharged the same. The plaintiff attained the age of twenty-one years before the commencement of this action.

The defendants, in their answer, and also upon the trial, admitted their liability to the plaintiff for one half of such balance of $1983.47, less the principal sum of the Boyd mortgage; but they insisted that they were not liable for the amount of the Boyd mortgage, nor for the interest which had accrued on the proceeds of such sale, or any part thereof;

but that Hurd, the assignee of the Boyd mortgage, was liable for the amount he had received on said mortgage, and that Post and Sayre, the sureties for Shimer, as general guardian, were liable for the interest which had accrued on the plaintiff's share of the proceeds of such sale; and they also insisted that said Hurd, and said Post and Sayre were necessary parties to this action, and should be brought in as such, to the end "that a final determination of this matter may be had between all the parties."

The referee decided that Hurd, Post and Sayre were not, nor was either of them a necessary party to this action; and that the defendants were liable to the plaintiff for one half of such balance of the proceeds of sale, with the interest thereon, and that he was entitled to judgment for $1996.31, besides costs.

The defendants' counsel excepted to the referee's conclusion of law.

*McDonald & Rose*, for the appellants. I. This action cannot be maintained until after an accounting has been had, or the amount due the wards (the plaintiff and his sister) from Isaac Shimer, deceased, as general, and especially as special guardian, has been, in some way, legally determined. (*Stilwell* v. *Mills*, 19 *John.* 304. *Salisbury and others* v. *Van Hoesen*, 3 *Hill*, 77.)

II. This court has already refused to allow the sureties of Isaac Shimer, as general guardian, or Edgar H. Hurd, purchaser of mortgage, to be made co-defendants, and hence has thus decided that this accounting, as to the respective liabilities of the sureties of Isaac Shimer, as general, and Isaac Shimer, as special guardian, as to each other, cannot be determined in this action. Hence one of three things must follow: Either, 1st. This action comes under the decision and cases cited in point first;

or, 2d. The questions of accounting and the respective liabilities of the sureties of the general and special guardian, should be tried in this action, and they should be made parties for that purpose, which this court has refused; or, 3d. If this action can be maintained at all, then the defendants must succeed when they show that any other persons or sureties are also liable to the plaintiff for any portion of the amount claimed, for which judgment has been rendered. If this be not so, then the question of the respective equitable rights of the sureties of the said Isaac Shimer, as general guardian, and his sureties, as special guardian, and said Edgar H. Hurd, as purchaser, between themselves, can never be determined.

III. But the sureties of Isaac Shimer, deceased, as general guardian, viz. Cooper Sayre and William Post, are liable for the interest on the plaintiff's one half of said $1983.47, and the defendants are liable for the one half of the principal only, less the Hurd mortgage, and not for any interest. 1st. Because, before said Isaac Shimer was appointed special guardian, he had already been appointed general guardian, and had entered upon the discharge of his trust, and the said Cooper Sayre and William Post had by their bond, under the statute, become especially liable for all income of the land till the plaintiff and his sister became of age. This income belongs, in law, to the general guardian only, and he only can bring an action for it. (*Genet* v. *Tallmadge*, 1 *John. Ch.* 561. *Holmes* v. *Seeley*, 17 *Wend.* 75–78.) By the sale, the nature of the estate is not changed; the principal sum is, in law, real estate, to be treated, in all respects, as real estate. The interest thereon which takes the place of crops or rent, is personal estate, to be inherited as personal estate, in case of death of ward, and to be, in all respects, treated as personal estate. (§ 180, *of art.* 7, *chap.* 1, *tit.* 2, *part* 3, *of N. Y. Stat. at Large, vol.* 2, *p.* 204. *Shumway* v. *Cooper*, 16 *Barb.* 558. *Sweezy* v. *Thayer*, 1 *Duer*, 286. *Davison* v.

*Deforrest,* 3 *Sandf. Ch.* 464. *Forman* v. *Marsh,* 11 *N. Y. Rep.* 544.) 2d. The giving of the bond by the defendants, as sureties for Isaac Shimer, as special guardian, even if it had also made the defendants liable for such income, (which we deny,) would not, in any manner, relieve the sureties for the general guardianship from their liability. (*Hamlin* v. *Atkinson,* 6 *Rand, Va. Rep.* 574.) 3d. The rules of this court require that the general guardian shall be appointed special guardian, and no other person will be appointed, except for some special reason. (*Chancery Rule,* 158. *Present Rule,* 66. *Matter of Wilson,* 2 *Paige,* 412.) The reason given is, that this "will save expense. That otherwise it would require two separate accounts." If, then, the person who is both general and special guardian, is only required to render one account for the income or interest, it must be as general guardian, and if not liable to account, as special guardian, his sureties as special guardian, the defendants, cannot be liable. 4th. The whole property, both principal and interest, is in the form of personal property. As to the interest, Isaac Shimer was, as general guardian, authorized to receive and expend it for the support of the plaintiff and his sister, and he did thus receive it. The nature of the property is personal. The object for which the property is sold, as set out in the petition, is that the interest might be used for the support of the plaintiff and sister, which is the duty and business of general guardian, and not of special guardian. Hence it must be supposed the interest was intended to be received, and was received, by Isaac Shimer, general guardian, and not as special guardian. (*Rule* 70 *of this court. Forman* v. *Marsh,* 1 *Kern.* 544 *and* 550.) 5th. All rules of law and of this court show that when the same person is both general and special guardian of the same ward, especially when the income or interest of the real estate is needed legally for the support of his ward, such person receives, holds, and is accountable for

such income or interest as general and not as special guardian. (*a.*) The general guardian is legally entitled to it, for the purposes of paying for support, as hereinbefore shown. (*b.*) The special guardian has no use for it, and, as special guardian, has no authority to use it for any purpose. (*c.*) The general guardian's bond must provide expressly for such income. (*Rule* 65.) (*d.*) The general guardian must, except in special cases, be appointed special guardian. (*See subdivison* 3*d of this point.*) (*e.*) Rule sixty-nine provides that the guardian (meaning the general guardian when appointed special guardian) shall invest the money, &c. and shall only be entitled to receive so much of the interest or income thereof, from time to time, as may be necessary for the support of the infant, without the order of the court. This, evidently, implies that, in such case, he may receive whatever of interest is necessary for the support of the infant, without any order, and this could only be in the capacity of general guardian. This, it must be remembered, is when the court directs as to the disposition of the avails. We submit this is just the case made by the petition, and just the disposition made by the court, as will be more fully shown hereafter.

IV. But even if, in ordinary cases, the sureties of a special guardian might be liable for the interest of the avails of lands sold, in this case it is clear, under the law and rules of court hereinbefore stated, from all the facts set out in the petition proven, adjudged to be true and acted upon by this court, and especially by the final order founded thereon, to invest the said $1983.47, that this court, by said order, (if and when it had been carried out by said Isaac Shimer,) intended to entirely free him from all liability whatever as special guardian, and leave him liable only for the interest as general guardian. 1. The petition shows that Isaac Shimer was their general guardian. That one reason for the sale is, that the sale will

render the interest of the minors in said land more productive. That they had no other means of support, and that some portion of the proceeds, over and above the annual interest, will be necessary for the education and support of said minors. 2. All these facts were adjudged to be true. 3. On these facts, after providing for the disposition of all the avails of sale, except the portion belonging to minors, (plaintiff and sister,) it provides as to that, " and that he invest the balance in security or securities upon unincumbered real estate of double the value, one half of said balance to be paid when each of said infants shall arrive at the age of twenty-one years, with annual interest thereon." Now we submit, if the said Isaac Shimer had carried out that order, he would have entirely relieved himself from all liability as special guardian. By the condition of the mortgages they would not be payable till minors became of age, and then they would each be entitled to receive their one half. As to the interest, it was to be paid annually, and as the court had adjudged that it (if not more) was necessary for the support of minors, Isaac Shimer, as general guardian, without further security, was to receive that for that purpose. The fact that, by the kindness of friends, it did not become necessary to expend it, cannot alter the facts found by the court, the order of the court based thereon, or the liabilty imposed, or intended to be imposed, by such order. (*See cases and rules of court before cited.*)

V. This final order to invest is the only one that the said Shimer failed to carry out, and we submit that he cannot *on account of its breach* be made liable for an amount (viz. the annual interest,) which he was entitled to receive even if he had in all respects fulfilled and carried out the order. After the entry of that order, on the facts proven, he was only liable for the *interest* of that sum as general guardian to be enforced by an order to account. And the uncle who supported the plaintiff and sister during minority

could now recover of the sureties of the general guardian's bond for such support, or the minors could now recover the amount of interest from the sureties of the general guardian's .bond. If this be so then either this action should not be maintained or this court should have allowed the sureties to have been joined as co-defendants.

VI. Although we do not find this exact question decided, yet we find decisions in other states, involving, as we claim, the same principles, viz. *State* v. *Jordan,* (3 *Har. & McHen. Rep. Md.* 179.) The action was on the executor's bond. Breach, 1st, non-payment of legacy; 2d, non-payment of debt due to the plaintiff from testator. Philip Key devised certain legacies; one to the plaintiff on condition that executors, &c. should be guardians, &c. of legatees. The executors never rendered any account, made any distribution or ascertained any balance. Held that sureties on executors' bonds were liable for the debt due but *not* liable for the *legacy.* No reason given, but we suppose that the same person being both executor and guardian, any property he may have received belonging to the legatees he would naturally have received as guardian, and hence it is that the executors are not liable for that amount. In *Downes* v. *The State,* (2 *Har. & John.* 339,) the Maryland Court of Appeals held, reversing decree below, that when the same person was administrator *de bonis non* and guardian, the sureties of the administrator were not liable for amount of a legacy due the ward of the guardian. (*Taylor* v. *Otis,* 4 *Mason,* 131.) But the cases we wish to call attention to are *Tyler* v. *Gildridge,* (*Hob.* 10; 3 *Burr.* 1380,) stating the doctrine of payment by way of retainer, by operation of law; also to *Clancey* v. *Dickey,* (2 *Hawks N. C. Rep.* 493;) *Scrankeys* v. *Cobb,* (2 *Bailey, S. Car. Rep.* 60;) *Harrison* v. *Ward,* 3 *Dev. N. C. Rep.* 417.) This last case held that when a person can take and hold in two capacities he cannot hold in both, but it must be assumed

Swartwout *v.* Oaks.

that he takes and holds in the capacity in which he of right should take and hold. .

VII. We submit that the reasoning of the learned referee in his opinion is founded on false premises. 1st. His first position is that the liability of a special guardian and his sureties is *in all cases the same* whether he be general guardian or not. We submit this position is unsound. If not, why do the rules of law and of this court require that the general guardian shall, (unless for special reasons) always be appointed special guardian? And why is it said that the reason for this is that it will save expense, and that there will be only one account? 2d. His second ground is that if "Shimer had been special guardian only, and another person general guardian, *no part of the interest* being required for the support or maintenance of the plaintiff, he could not, without the order of the court, pay over any interest to the general guardian," citing rules of court 62 and 70.

*H. L. Comstock,* for the respondent. I. Post and Sayre, the sureties of Shimer, as *general* guardian, were not necessary or proper parties to this action, for the reason that they were not liable to the plaintiff for the misapplication of the proceeds of the sale of his real estate, or the interest which accrued thereon. 1. The defendants have not alleged, nor given any evidence tending to prove, nor has the referee found that Shimer ever received, or intended to receive, any part of such proceeds of sale, or the interest thereon, as such general guardian; nor does it appear that he ever considered or treated any of said moneys as in his hands, or under his control, as such general guardian. 2. It cannot be presumed that Shimer received any part of the proceeds of such sale, or the interest thereon, as general guardian, for the following reasons: (*a.*) The two trusts of the general and special guardianship reposed in Shimer, were just as distinct as

though they had been confided to different persons. (*Muir* v. *Wilson, Hopk.* 512.) (*b.*) It·was no part of the duty of Shimer, as general guardian, to take charge of the proceeds of the sale of his ward's real estate, nor could he lawfully do so without the order of the court. (*c.*) The bond which Shimer gave, as general guardian, did not cover, or apply to, nor was it intended as a security for, the proceeds of the sale of the wards' real estate; and hence the sureties in such bond are not liable for such proceeds of sale, or the interest thereon. (*Muir* v. *Wilson, supra,* 2.)

II. The defendants are liable to the plaintiff for the *interest* as well as the principal of the proceeds of the sale of his real estate. 1. The bond given by Shimer for the performance of his duties as *special* guardian, was intended as a security for the *interest,* as well as the principal, of the moneys arising from the sale of the real estate. The statute provides that special guardians shall give a bond to the infants, conditioned "for the faithful performance of the trust reposed, for the paying over, investing and accounting for, *all moneys that shall be received by such guardians.*" (2 *R. S.* 194, § 172. *Id.* 195, § 179.) Was it not a part of the trust reposed in the special guardian, that he should preserve, account for, and pay over the *interest* as well as the principal of the funds arising from the sale, especially when the investment of the funds was confided to him? So the court must have understood the nature and scope of the trust, when it adopted the rule that "the security required on the sale of the real estate of an infant shall be a bond of the guardian, with two sufficient sureties, in a penalty double the value of the premises, *including the interest on the value during the minority of the infant.*" (*Rule* 63, *of* 1849. *Rule* 59, *of* 1864.) 2. The special guardian in this case actually received the whole of the proceeds of the sale, and converted the whole of the trust funds to his own private use, and died utterly insolvent,

Swartwout *v.* Oaks.

leaving no property whatever; and if the defendants are not liable for the interest, the plaintiff has no remedy therefor.

III. The defendants are liable to the plaintiff for his share of the money received by Shimer of Hurd as the consideration for the assignment of the Boyd bond and mortgage. 1. The $500 loaned to Boyd, for which these securities were given, was a *part of the proceeds of the sale of the real estate of the two minors,* and the loan was made by Shimer *as their special guardian.* 2. Shimer took this bond and mortgage in his own name, describing himself as guardian of said minors, and he was, therefore, the *obligee* and *mortgagee,* and had the *legal title* to these securities. 3. He was a trustee of an express trust, and might, therefore, even under the Code, have sued, in his own name, upon the bond, or to foreclose the mortgage. (*The People* v. *Norton,* 5 *Seld.* 176. *Pardee* v. *Van Anken,* 3 *Barb.* 534. *Stillwell* v. *Hurlbert,* 18 *N. Y. Rep.* 374.) 4. He had a right to receive payment and discharge the bond and mortgage. (*Allen* v. *Randolph,* 4 *John. Ch.* 693. *The People* v. *Keyser,* 28 *N. Y. Rep.* 226.) 5. The bond and mortgage having matured, Shimer's right to assign them for the *full amount due thereon* must be co-extensive with his right to sue to enforce payment of the money secured thereby. What difference does it make to the plaintiff or the defendants, whether Shimer obtained the money due on the bond and mortgage by foreclosing the mortgage, or by assigning the securities. 6. Shimer received the money paid by Hurd for the assignment, *as special guardian of the two minors,* and they have a right to treat it as their money, in his hands as their special guardian, and to hold the defendants responsible for its misappropriation by such guardian, whether the assignment was strictly lawful or not. 7. The defendants cannot excuse themselves from liability by showing that the principal conducted himself improperly in relation to the trust; nor can they turn the wards over to a doubtful,

if not a hopeless remedy against an innocent purchaser of a security for the trust funds; for the wards are not bound, even if they had the right, to look beyond their guardian and his sureties. 8. If Shimer were living, and had been made a party to this suit, he could not have set up as a defense that he had wrongfully assigned the securities for the trust fund without the order of the court; and for the same reason the sureties cannot interpose such a defense, for they are responsible on their bond, wherever the principal would be responsible. (*Hobbs* v. *Middleton*, 1 *J. J. Marsh*, 176, 178. *White* v. *Parker*, 8 *Barb*. 48, 56.)

IV. Hurd, the assignee of the Boyd bond and mortgage, was not a necessary or proper party to this action, for the following reasons: 1. He had a right to purchase the bond and mortgage of the *obligee* and *mortgagee* who had the legal title, and he became the legal owner thereof. 2. If Shimer had not a strict legal right to assign the bond and mortgage, still, as there is no allegation of fraud against Hurd, and it is admitted he paid for the assignment the full amount due on the mortgage, to the trustee, he is equitably entitled to be subrogated in the place of the trustee, as against him and his sureties; for his equity is stronger than that which the defendants attempt to set up. This point was really decided by this court, in denying the motion to compel the plaintiff to make Hurd, as well as Post and Sayre, parties. In no view of the case, was it proper to join Hurd as a party with the defendants. If he was liable at all to the plaintiff, it was a separate and distinct liability, and not a liability in common with the defendants, and must be enforced in a separate suit. The only question in this case is, whether the fact of the assignment by the special guardian of the bond and mortgage to Hurd, after their maturity, for the full amount due thereon, constitutes any defense in favor of the sureties, when it is admitted that the guardian has received and

Swartwout v. Oaks.

squandered the money, and there is no allegation of bad faith on the part of Hurd.

*By the Court,* JOHNSON, J.  It is admitted by the counsel for the defendants that they are liable, upon the bond, for the principal of the fund which the special guardian of the plaintiff received and converted to his own use in violation of his duty and trust as such guardian.  It is contended, however, that they are not liable for the interest, which their principal received from the fund, although he converted it to his own use, as he did the principal, and never paid or expended any portion of either for the use and benefit of the plaintiff.  The special guardian was also general guardian of the plaintiff, and it is claimed that he must be adjudged to have received the interest in his capacity of general guardian; and that the defendants not having been sureties for him as general guardian, but as special guardian only, cannot be made liable for such interest.  But upon the facts found by the referee, and about which there is no dispute, there is no presumption that Shimer, their principal, received the interest in any other capacity than that of special guardian.  The portion of the fund which he invested, he invested in violation of the order of the court, in respect to the time of payment. He made the securities, interest as well as principal, payable to himself as special guardian.  Upon one of the securities the payments of interest are indorsed by him as special guardian.  And indeed the legal presumption must be that he received both principal and interest in the way, and in the character in which they were made payable, in the absence of any evidence to the contrary.  By the order of the court the special guardian was required to invest the fund in securities, upon unincumbered real estate, of double the value, payable one half to each, when the plaintiff and the other infant should respectively arrive

at the age of twenty-one years, with annual interest. The order does not specify in whose name the securities shall be taken, nor does the statute. Rule 69 of this court provides that the proceeds of the sale of the infant's real estate shall be brought "into court," or the special guardian shall "invest the same under the direction of the court, for the use of the infant." I am of the opinion, therefore, that it was no violation of the order of the court or of the duty of the special guardian, to make the securities payable to himself as such special guardian. The error in this respect was as to the time at which the principal was made payable. He had no right to receive the principal at all without the order of the court, after its investment; and the rule above referred to prohibits him from receiving any more of the interest or income without the order of the court, than may be necessary for the support and maintenance of the infant. Here nothing was necessary for the support of the plaintiff. The referee finds that he lived with, and was supported by an uncle, without charge to Shimer, either as special or general guardian. The condition, therefore, on which his right to receive the interest, or a portion thereof, without the order of the court depended, did not exist. Rule 69 relates to the special guardian, and not to a general guardian, as the defendants' counsel supposes. As general guardian, clearly Shimer had no use for the money, as he was not called upon or required to furnish any thing for the plaintiffs' support and maintenance. Indeed, it is clear that he received it only to use for himself. This is to be inferred from the fact that he so used it. The interest, as well as the principal, was therefore received and converted by Shimer in clear violation of his trust, and of his obligation as special guardian, and his sureties became liable to the plaintiff for both.

There is no force in the suggestion that the plaintiff must follow the Boyd bond and mortgage in the hands of

Hurd, the assignee. It is enough for him that his special guardian sold the security and realized the money upon it to his own use, in violation of his trust and his bond. The judgment should, therefore, be affirmed.

[Monroe General Term, December 7, 1868. *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]